AO 91 (Rev. 02/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | |
|---|---|
| United States of America | ) |
|   | ) |
| (1) Lawrence M. PERLMUTTER; and (2) Secundino CESPEDES | ) Case No.  10- 863-MBB |
|   | ) |
|   | ) |
| _____ | ) |
| *Defendant* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of 02/03/2010   in the county of   Suffolk        in the _____ District of

Massachusetts      , the defendant violated   18        U. S. C. §  1956(h), and 31 U.S.C. §§ 5322, 5331
, an offense described as follows:

(1) Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h); and
(2) Failure to File Forms 8300, in violation of 31 U.S.C. §§ 5322, 5331

This criminal complaint is based on these facts:
See attached Affidavit of IRS Special Agent Ryan J. Talbot

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan J. Talbot, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   February 3, 2010 @ 4:40pm

_____
*Judge's signature*

City and state:     Boston, Massachusetts

Honorable Marianne B. Bowler, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF SPECIAL AGENT RYAN J. TALBOT

I, Ryan J. Talbot, being duly sworn, state as follows:

Introduction

1.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division ("IRS-CID") and have been so employed since August 1998. My responsibilities as a Special Agent include the investigation of possible criminal violations of the Internal Revenue Laws (26 U.S.C.§ 7201 et seq.), the Bank Secrecy Act (31 U.S.C. § 5324 et seq.), the Money Laundering Control Act (18 U.S.C. §§ 1956, 1957, and 1960), and the forfeiture of assets based on such offenses (Title 18 U.S.C. § 981 et seq.).

2.      I attended twenty-four weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia. This training focused on the various criminal violations investigated by IRS-CID Special Agents and included training on criminal statutes, constitutional law, investigative tools and techniques, and the interviewing and debriefing of witnesses. In addition to this initial training, I have attended yearly continuing professional education training from IRS-CID and the Department of Justice's Asset Forfeiture and Money Laundering Section regarding tax and money laundering investigations, the Bank Secrecy Act, civil and criminal forfeiture, and other federal violations. I have provided instruction on money laundering and Bank Secrecy Act violations to various law enforcement officers and professionals in the banking and accounting community and I passed the Certified Anti-Money Laundering Specialist Examination. I have participated in both international and domestic investigations of drug trafficking and money laundering organizations and have assisted in the preparation and execution of several search and seizure warrants which have resulted in the seizure of substantial assets.

1

3.      As a Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of criminal laws of the United States and thereby authorized to request the issuance of federal search and seizure warrants.

4.      I make this affidavit in support of a criminal complaint charging: (1) Lawrence M. PERLMUTTER, Esquire, and Secundino CESPEDES with conspiring to launder money by knowingly and intentionally combining, conspiring, confederating, and agreeing with each other and with other persons to: (a) conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (b) conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State and Federal law, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); and (c) engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that

is derived from specified unlawful activity, in violation of 18 U.S.C. § 1957, all in violation of 18 U.S.C. § 1956(h); and (2) PERLMUTTER with failing to file Forms 8300, in violation of 31 U.S.C. §§ 5322 and 5331.[1]

5.     The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, information conveyed to me by other law enforcement officials, information obtained from IRS records, including the Currency Bank Retrieval System "CBRS" (which contains records relating to Forms 8300), and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that PERLMUTTER and CESPEDES have committed the above-described offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause for the complaint against PERLMUTTER and CESPEDES.

<u>Defendants</u>

6.     Lawrence PERLMUTTER is an attorney who was admitted to the Massachusetts bar in 1988. His membership is active. He is also admitted in the U.S. District Court, District of Massachusetts. His business address is 15 Court Square, Suite 200, Boston, Massachusetts. His

---

[1] 31 U.S.C. § 5331 provides in part that, "any person ... engaged in a trade or business; and who, in the course of such trade or business, receives more than $10,000 in coins or currency ... shall file a report ... with the Financial Crimes Enforcement Network at such time and in such manner as the Secretary may, by regulation, prescribe." 31 U.S.C. § 5322 provides that a person who willfully violates Section 5331 shall be fined not more than $250,000, or imprisoned for not more than five years, or both. Under federal regulations, lawyers qualify as businesses "engaging in a trade or business." The report that must be filed pursuant to Section 5331 is commonly referred to as a Form 8300.

residence is 17 Johnson Place, Auburndale, Massachusetts. He has no known criminal history.

7.       Secundino CESPEDES lives at 91 Ames Street, Apartment C214, Dorchester, Massachusetts. According to information obtained from the Massachusetts Criminal History Systems Board, CESPEDES, who has five aliases, was charged with possession with intent to distribute cocaine in West Roxbury District Court in August 1998, but that case was eventually dismissed.

<u>Background and Summary of Investigation</u>

8.       There is probable cause to believe that from 2006 to 2010, PERLMUTTER and CESPEDES conspired to conceal the illicit source of over $1.7 million in drug proceeds by converting the drug money into cashier's checks. To do this, PERLMUTTER deposited over $1.7 million in cash, typically in small denomination bills, into a special type of account designed for attorneys to safeguard client funds known as an Interest On Lawyer's Trust Account ("IOLTA").[2] After depositing the cash into his IOLTA account, PERLMUTTER immediately obtained cashier's

---

[2] IOLTA is a program which collects and uses interest from certain attorney trust accounts for charitable law-related activities. The program was created in 1985 by the Massachusetts Supreme Judicial Court, acting under its constitutional power to regulate lawyers and the practice of law. Lawyers often hold money that belongs to *clients* (emphasis added throughout ) — such as settlement checks, fees advanced for services not yet performed, or money to pay for various court fees. When the amount of money that an attorney handles for a *client* is relatively large and is held for a lengthy period of time, the lawyer deposits the money in a separate bank account. The funds then earn interest for the *client*. But when the amount of funds held for a *client* is relatively small, or large amounts held for only a short period of time, the funds are deposited into an IOLTA account.

According to the Massachusetts Interest on Lawyers' Trust Accounts website, MAIOLTA.ORG, Rule 1.15 of the Massachusetts Rules of Professional Conduct, Safekeeping Property, establishes the standards and guidelines by which attorneys are expected to manage *client* funds. Rule 1.15 states in part that, "No withdrawal from a trust account shall be made by a check which is not prenumbered. No withdrawal shall be made in cash or by automatic teller machine or any similar method. No withdrawal shall be made by a check payable to "cash" or "bearer" or by any similar method which does not identify the recipient of the funds."

checks drawn on the IOLTA account that were used to bail out defendants with pending drug cases in various Massachusetts state courts. PERLMUTTER did not actually represent any of the defendants bailed out with checks drawn on his IOLTA account described below. By converting large amounts of cash into cashier's checks, PERLMUTTER and CESPEDES enabled the associates of those drug defendants to avoid bringing cash directly to bail commissioners, which triggers mandatory federal reporting requirements and can subject the money to immediate seizure by law enforcement. In so doing, PERLMUTTER and CESPEDES helped conceal from the authorities the fact that the cash used to bail out these defendants was proceeds of illegal drug trafficking. For this service, PERLMUTTER, CESPEDES, and their co-conspirators charged the associates of these drug defendants a substantial fee.

9.      In addition to the money laundering conspiracy, there is probable cause to believe that PERLMUTTER repeatedly failed to file Forms 8300 when such filings were required, in violation of 31 U.S.C. §§ 5322, 5331. PERLMUTTER also did not file a Form 1040 federal tax return in 2002, 2003, 2004, 2005, 2006, and 2007.

May 28, 2009, $250,000 Bail of Pedro Ferrero-Ramos

10.     This investigation was initiated as a result of the Boston Police Department's ("BPD") May 28, 2009 seizure of $250,000 that was posted as bail by Pedro Ferrero-Ramos ("Ramos"), a defendant in a Suffolk County, Massachusetts Superior Court drug case. As a result of that seizure and the subsequent investigation, agents learned that during the period of February 2006 through December 2009, over $1.7 million in cash was deposited into PERLMUTTER's IOLTA account, and then immediately withdrawn and converted to cashier's checks used for bail. The cash PERLMUTTER deposited and converted into cashier's checks through his IOLTA was

provided to him by CESPEDES and/or the owner of a storefront business in Roxbury, Rafael Benzan.[3]

11.     Ramos was arrested by BPD on June 25, 2007 and charged with trafficking over 200 grams of cocaine. He was bailed and subsequently re-arrested after defaulting on his bail conditions in early May 2009. Ramos's new bail was set at $250,000. After making bail, Ramos was released on May 28, 2009.

12.     In October 2009, after being provided detailed information related to the bail of Ramos, the U.S. Drug Enforcement Administration ("DEA") signed up a cooperating source ("CS"). The CS, who has no criminal convictions, has been deemed credible, as the information provided has been corroborated by previously known information and bank documents obtained from the Bank of America.

13.     According to the CS, who has known Ramos for approximately one and a half years, s/he met with Benzan at his office in Roxbury, Massachusetts in May 2009 on behalf of Ramos. The CS stated that after Ramos's bail was set at $250,000, s/he talked with some people associated with Ramos in order to "get somebody, an attorney, to get the bail." Eventually, the CS was given the name and phone number of Benzan, whom the CS was told would be able to handle the bail. Because Benzan will not meet with anyone that he does not know, the CS and an associate of Ramos who had previously been bailed out by Benzan set up a meeting with Benzan. In a call prior to the meeting, Benzan told Ramos's associate that his fee to bail out Ramos would be $30,000 in cash.

---

[3] Rafael Benzan currently maintains a storefront office located at 72 Warren Street, Roxbury, Massachusetts. The sign above Benzan's office states "Professional Services," to include Notary Public, Justice of the Peace, Translation, Copies, Faxing, Income Tax Preparation (Personal and Small Business), and Attorney Services. He has no known criminal history.

14.     According to the CS, s/he and an associate of Ramos went to Benzan's office on the

Saturday (May 23, 2009) prior to the week that Ramos was bailed out. According to the CS, at the

initial Saturday meeting, Benzan asked for the "details" of Ramos's case, which, according to the

CS, was Ramos's name, date of birth, social security number, and the jail at which he was currently

housed. The CS stated that Benzan took notes as the CS provided these details, which Benzan later

placed into a folder. During the meeting, Benzan advised the CS to gather the cash to be used for

Ramos's bail and to call Benzan when they were ready to drop the cash off at his office. Benzan

further advised that the money needed to be brought to his office on a weekday, as the money would

have to be deposited into a bank.

15.     During the initial meeting, the CS asked Benzan why his fee was so high, to which

he replied that if the fee was too high then the CS should "find someone else to do it." The CS also

stated that Benzan advised the CS to not talk to an attorney or to comment to anyone about the

handling of the bail transaction by Benzan or else he would not be able to conduct the transaction.

According to the CS, Benzan represents himself as a notary. The CS stated that Benzan has a

secretary that stays in the outer office area.

16.     Following the initial meeting with Benzan, Ramos's associate collected the remainder

of the cash to be used for Ramos's bail. According to the CS, the associate of Ramos had started

gathering the cash prior to the initial meeting with Benzan in anticipation that the bail would be

$250,000. The CS further stated that s/he was not directly involved in the collection of the cash for

Ramos's bail.

17.     According to the CS, once the $280,000 (bail plus Benzan's fee) was collected, a

second meeting was set up for the Tuesday, May 26, 2009, to provide Benzan with the cash. On that

7

day, the cash was brought to Benzan's office in a suitcase in various denominations of bills. The CS stated that the bills, which were rubber banded together by denomination, were a mixture of both older and newer bills.

18.     At the May 26, 2009, meeting in Benzan's office, the CS and Ramos's associate hand-counted the $280,000 cash while Benzan watched. According to the CS, the count took approximately four hours (from approximately 4 p.m. when they arrived until approximately 8 p.m. when they departed). The CS stated that after the cash was counted, Benzan took his fee of $30,000 and advised the CS and Ramos's associate that he would call them when the check was ready, which he said could take one to two days.

19.     Bank records show that on May 27, 2009, a $250,000 cash deposit was made into PERLMUTTER's Bank of America IOLTA account 004604721464 (hereinafter, "IOLTA account") at the bank located at 112 Dudley Street, Roxbury, Massachusetts. Bank security video reveals that PERLMUTTER and CESPEDES conducted this transaction together at the teller window. Information provided by Bank of America showed that the cash provided to purchase the cashier's check consisted of: (1) 1,049 $100 bills; (2) 200 $50 bills; (3) 6,696 $20 bills; (4) Eight $10 bills; and (5) 1,100 $1 bills. Also on May 27, 2009, a $250,000 withdrawal was made from PERLMUTTER's IOLTA account in the form of a cashier's check payable to Boston Municipal Court Criminal Court Clerk. The cashier's check listed the purchaser/remitter as Pedro Ferrero-Ramos. PERLMUTTER is not the attorney of record in Ramos's case.

20.     The CS stated that s/he and Ramos's associate went to the Nashua Street Jail in

8

Boston on a Thursday[4] to meet with Benzan and bail out Ramos. The CS stated that Benzan was at the jail with an associate that the CS referred to as Benzan's driver. The CS stated that s/he did not observe this individual during the two meetings with Benzan at his office.

21.      According to the CS, s/he and Benzan went inside the jail while Benzan's driver and Ramos's associate remained outside in their respective vehicles. The CS stated that at the jail, Benzan advised the CS to tell Ramos not to speak with his attorney.

22.      In connection with this investigation, I and other agents interviewed the criminal court clerk. According to him, on May 28, 2009, two unidentified Hispanic males gave him the $250,000 cashier's check. When the clerk inquired as to who was going to sign for the surety, they responded, "Pedro." The clerk proceeded to fill out the recognizance form, which he then gave to Ramos and which Ramos signed, listing himself as both the defendant and as surety for the bail money. In signing as surety, Ramos was effectively stating that the bail money was his and thus should be returned to him at the conclusion of the court proceedings. On July 9, 2009, pursuant to a seizure warrant issued by a Suffolk County, Massachusetts Superior Court Judge who found probable cause to believe the $250,000 was drug money, BPD seized the $250,000.

Additional Bail Postings Involving PERLMUTTER's IOLTA Account

23.      In addition to the Ramos bail, there are numerous additional cases in which a cashier's check was purchased through PERLMUTTER's IOLTA account and then used to bail out a defendant being held on state drug charges. With one exception, in each of these additional cases outlined below, PERLMUTTER and CESPEDES are present together at the teller window during

---

[4] While the CS believed s/he went on a Thursday, Ramos was actually bailed out on Wednesday May 27, 2009.

the deposit of cash into PERLMUTTER's IOLTA account and subsequent purchase of a cashier's check. In addition, PERLMUTTER is not the attorney of record in any of the below-described cases.

24.     Raul Gonzalez-Parilla was arrested by the Massachusetts State Police on June 2, 2009, and charged with trafficking approximately 359 grams heroin, among other charges. At the time of Gonzalez-Parilla's arrest, he was operating a vehicle with a hidden compartment containing approximately 359 grams of heroin and $400 in twenty-dollar bills.

25.     On June 23, 2009, a $35,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. See Table 1.4 below. Bank security video shows PERLMUTTER and CESPEDES together at the teller window making the deposit. On the same day, the cash was withdrawn from the account and a cashier's check was made payable to Dedham District Court. The cashier's check listed the purchaser/remitter as Gonzalez-Parilla. PERLMUTTER is not the attorney of record for Gonzalez-Parilla. On June 24, 2009, CESPEDES bailed out Gonzalez-Parilla for $35,000. See Table 1.3 below. I also reviewed the bail recognizance form that was completed for the bail of Gonzalez-Parilla. The surety for the bail is listed as CESPEDES.

26.     Franklyn Cardona-Negron ("Negron") was arrested by BPD on March 9, 2009 and charged with trafficking over 200 grams of heroin. At the time of Negron's arrest, he was operating a vehicle with an electronically operated hidden compartment containing approximately 350 grams of heroin and $2,286 in currency. The currency consisted primarily of low-denomination bills. Negron was incarcerated from the date of his arrest until the date of his bail release on July 10, 2009.

27.     On July 10, 2009, an $80,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. Bank

10

security video shows PERLMUTTER and CESPEDES together at the teller window making the deposit. Information provided by Bank of America showed that the cash provided to purchase the cashiers check was made up of the following denominations: (1) 280 $100 bills; (2) 100 $50 bills; and (3) 2,350 $20 bills.   On the same day, July 10, 2009, the cash was withdrawn from PERLMUTTER's IOLTA account and an $80,000 cashier's check was issued made payable to Boston Municipal Court Clerk. The cashier's check listed the purchaser/remitter as Negron. PERLMUTTER is not the attorney of record for Negron.

28.    Agents participating in this investigation interviewed a Boston Municipal Court Assistant Clerk. He stated that on July 10, 2009, an individual who did not identify himself gave the assistant clerk an $80,000 cashier's check in the lobby of the Nashua Street Jail to bail out Negron, and departed shortly thereafter. He also stated that he filled out the recognizance form, except for the defendant signature and surety signature, and gave the form to Negron. Negron then signed his name as defendant and surety for the bail money.

29.    Nordier Correa was arrested by BPD on May 8, 2009 and charged with trafficking over 74 grams of cocaine. At the time of Correa's arrest, he was operating a vehicle that contained an electronically controlled hidden compartment containing approximately 74 grams of cocaine and $10,954 cash.

30.    On August 4, 2009, a $20,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. Bank security video shows PERLMUTTER and CESPEDES together at the teller window making the deposit. Information provided by Bank of America showed that the cash provided to purchase the cashier's check was 200 $100 bills. On the same day, August 4, 2009, $20,000 was withdrawn from

11

the account and a cashier's check was issued made payable to a clerk of court. The cashier's check listed the purchaser/remitter as Correa. PERLMUTTER is not the attorney of record for Correa.

31.      Bryant Baez was arrested by the Massachusetts State Police in New Bedford, Massachusetts on August 5, 2009 and charged with possession of a firearm and trafficking over 200 grams of cocaine. Baez had $12,285 in cash on him when he was arrested.

32.      On August 13, 2009, a $50,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. Bank security video shows PERLMUTTER and CESPEDES together at the teller window making the deposit. On the same day, the cash was withdrawn from the account and a cashier's check was issued made payable to Clerk Magistrate, New Bedford District Court. The cashier's check listed the purchaser/remitter as Baez. No denomination information was available for this particular deposit. PERLMUTTER is not the attorney of record for Baez. I also reviewed the recognizance form that was completed for the bail of Baez. The surety for the bail is listed as "Pro Se."

33.      Jose Maldonado-Baez ("Maldonado") was arrested by the Lynn, Massachusetts Police Department on August 29, 2009, and charged with trafficking over 100 grams of heroin, among other charges. During the booking process, it was confirmed that Maldonado had previous drug-related arrests and an outstanding Bristol County warrant; as a result he was transported to a Bristol County jail.

34.      On October 6, 2009, a $50,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. Bank security video shows PERLMUTTER and CESPEDES together at the teller window making the deposit. On the same day, the cash was withdrawn from the account and a cashier's check was

issued made payable to New Bedford District Court/Jose Marmolejo. The cashier's check listed the purchaser/remitter as "Marmolejo," although the check was eventually used to bail out Maldonado. No denomination information was available for this particular deposit from Bank of America. PERLMUTTER is not the attorney of record for Maldonado. According to the recognizance form that was completed for Maldonado's bail, the surety is listed as CESPEDES.

35.     On February 4, 2009, William Cotto was arrested by the Beverly Police Department and charged with trafficking over 55 grams of heroin. At the time of his arrest, Cotto also had approximately 28 grams of cocaine and $740 in cash.

36.     On December 8, 2009, a $50,000 cash deposit was made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts. Bank security video reveals that only PERLMUTTER was at the teller window for this transaction. It should also be noted that PERLMUTTER was holding a blue/purple note pad while making the deposit. Information provided by Bank of America showed that the cash provided to purchase the cashiers check was made up of the following denominations: (1) 386 $100 bills; (2) 138 $50 bills; and (3) 225 $20 bills. On the same day, the cash was withdrawn from the account and a cashier's check was issued made payable to Essex Superior Court, Salem. The cashier's check listed the purchaser/remitter as Cotto. PERLMUTTER is not the attorney of record for Cotto.

Benzan's Bank Records

37.     I have reviewed Benzan's Citizens Bank records, including account number 113759-927-5 in the name of "Rafael Benzan/Professional Services" (which was closed in December 2008) and account number 131508-979-0, also in the name of "Rafael Benzan/Professional Services" (which was open in May 2009 and is open currently). A review of both of these account records

13

during the period of January 1, 2005 through September 1, 2009 shows the following payments from

Benzan to PERLMUTTER and CESPEDES:

## Table 1.1

| Date | CESPEDES | PERLMUTTER |
|------|----------|------------|
| 7/28/2005 | | $ 110 |
| 8/30/2005 | $ 1,000 | |
| 9/6/2005 | $ 1,000 | |
| 9/16/2005 | $ 657 | |
| 9/30/2005 | $ 300 | |
| 9/29/2005 | | $ 200 |
| 9/30/2005 | $ 300 | |
| 10/7/2005 | $ 200 | |
| 10/13/2005 | $ 950 | |
| 11/2/2005 | $ 700 | |
| 12/19/2005 | $ 200 | |
| 12/22/2005 | $ 300 | |
| 12/28/2005 | $ 375 | |
| 12/30/2005 | $ 200 | |
| 1/4/2006 | $ 100 | |
| 1/9/2006 | $ 1,800 | |
| 1/10/2006 | $ 1,000 | |
| 1/30/2006 | $ 2,500 | |
| 2/1/2006 | | $ 400 |
| 3/27/2006 | | $ 200 |
| 10/5/2006 | | $ 300 |
| 11/4/2006 | $ 400 | |
| 11/17/2006 | $ 400 | |
| 2/20/2007 | | $ 140 |
| 3/2/2007 | $ 550 | |
| 8/7/2007 | | $ 1,000 |
| 8/18/2007 | $ 308 | |
| 10/17/2007 | $ 202 | |
| 1/28/2008 | | $ 800 |
| 8/23/2008 | $ 200 | |
| 6/6/2009 | $ 400 | |
| 6/12/2009 | $ 300 | |
| 6/13/2009 | $ 200 | |
| 7/6/2009 | | $ 340 |
| 8/3/2009 | | $ 700 |
| 8/18/2009 | | $ 300 |
| 11/4/2009 | $ 300 | |
| 12/30/2009 | | $ 300 |
| TOTAL: | $14,842.52 | $ 4,790 |

14

38.    On June 18, 2007, a $500 check from Zoila Villatoro, payable to PERLMUTTER, was deposited into Benzan's Citizens Bank account.  The mailing address for both of Benzan's monthly bank statements is 72 Warren Street, Roxbury, Massachusetts.

39.    I have also reviewed CBRS records for information related to Benzan.  These records showed Forms 8300 completed by various clerks of court and/or bail commissioners for bail transactions conducted by Benzan in Massachusetts using both cash and cashier's checks dating back to 1997.  On these Forms 8300, various occupations are listed for Benzan, including interpreter, lawyer, and retired.  A schedule of these bail transactions is as follows:

**Table 1.2**

| Date | Cash | Cashiers Check | | Defendant | Benzan Occupation |
|------|------|------|------|-----------|-------------------|
| 4/23/1997 | $ 50,000 | | | Samuel MORETA | Retired |
| 4/25/1997 | $ 20,000 | | | Anulfo SUAZO | Retired |
| 12/7/1998 | | $ | 20,000 | Rafael VILLALONA | Interpreter |
| 12/13/2000 | | $ | 25,000 | Juan RIOS | Interpreter |
| 5/19/2004 | $ 30,000 | | | Lorenzo ECHAVARIA | Interpreter |
| 4/27/2007 | $ 20,000 | | | Wendel HERNANDEZ | Lawyer |
| 7/25/2007 | $ 25,000 | | | Celeida PEREZ | Lawyer |
| 10/22/2008 | | $ | 25,000 | Edgardo RIVERA | Interpreter |
| 11/24/2008 | | $ | 35,000 | Jose PEREZ | None Listed |
| 12/6/2008 | | $ | 25,000 | R. DIAZ-SANCHEZ | Interpreter |
| 12/19/2008 | $ 25,000 | | | Carlos ALDEAROSA | Retired |
| 2/27/2009 | $ 10,040 | | | Jose TORRES-COLON | Self Retired |
| | $180,040 | $ | 130,000 | | |
| TOTAL: | $310,040 | | | | |

40.    With respect to the above transactions, on October 22, 2008, November 24, 2008, and December 6, 2008, the cashier's checks were issued following cash deposits PERLMUTTER made into his IOLTA account in the exact same amount as the cashier's check that was used to bail out the drug defendant.  For example, on November 21, 2008, PERLMUTTER deposited $35,000 into

his IOLTA account and received a cashier's check (which I reviewed after receiving it pursuant to a subpoena) that indicated the purchaser was Jose Perez. See Table 1.4. Then, on November 24, 2008, Benzan bailed out Jose Perez for $35,000. See Table 1.2.

Bank Records Related to CESPEDES

41.     As detailed above, CESPEDES accompanied PERLMUTTER during substantial cash deposits made into PERLMUTTER's IOLTA account at the Bank of America banking center at 112 Dudley Street, Roxbury, Massachusetts on May 27, 2009, June 19, 2009, June 23, 2009, July 10, 2009, August 4, 2009, August 13, 2009, and October 6, 2009. The banking center is approximately 300-400 yards from Benzan's office at 72 Warren Street, Roxbury, Massachusetts.

42.     On October 16, 2009 and February 2, 2010, agents conducting surveillance at Benzan's office observed CESPEDES both departing and entering Benzan's office.

43.     A review of CBRS information related to CESPEDES revealed seven cash transactions totaling $250,000 during the period of April 2006 through June 24, 2009. Five of the transactions were Forms 8300 completed by clerks of court and/or bail commissioners in Massachusetts for defendants that CESPEDES was helping to bail out. The other two transactions were Currency Transaction Reports ("CTRs")[5] filed by banks on behalf of CESPEDES when he purchased cashier's checks. A summary of the Forms 8300 transactions are as follows:

**Table 1.3**

| Date | Cash | Cashiers Check | Defendant | Occupation |
|------|------|----------------|-----------|------------|
| 4/11/2006 | $ 15,000 | | Unknown | Auto Mechanic |
| 11/30/2006 | $ 20,000 | | Ramon DELGARDO-LLANOS | Not Listed |
| 1/25/2007 | $ 50,000 | | Luis SUAREZ | Carpenter |

---

[5]   If a deposit or deposits totaling more than $10,000 in cash or coin is made into one bank account in one business day, under law, the bank is obligated to file a CTR.

| | | | | | Automobile |
|---|---|---|---|---|---|
| 9/9/2008 | $ 15,000 | | | Enclen GUERRERO | Supervisor |
| 6/24/2009 | | $ | 35,000 | Raul GONZALEZ | Not Listed |
| | $100,000 | $ | 35,000 | | |
| TOTAL: | $135,000 | | | | |

44.     Luis Suarez, the defendant listed above who was bailed for $50,000, was arrested by the Chelsea Police Department on January 23, 2007 and charged with trafficking over 200 grams of cocaine. At the time of his arrest, Suarez was the passenger in a vehicle containing an electronically controlled hidden compartment with approximately 225 grams of cocaine and $2,000 cash. To effect the bail, CESPEDES provided $50,000 in cash to Assistant Clerk Magistrate Andrew Burke. Burke filed a Form 8300 on the transaction. According to that form, only $24,800 of the $50,000 used consisted of $100 bills or higher. According to the bail recognizance form, the surety for Suarez's bail was listed as CESPEDES.

### Bank Records Related to PERLMUTTER's IOLTA Account

45.     PERLMUTTER opened his Bank of America IOLTA account on January 25, 2006. From that date through December 8, 2009, PERLMUTTER made deposits totaling approximately $1.8 million into the account.[6] Of that amount, $1.75 million was in cash and approximately $15,000 was checks or other deposits. All of the large cash deposits ($5,000 - $250,000) were followed by an immediate counter debit withdrawal to purchase a cashier's check. Each check listed an incarcerated Hispanic male as the remitter and was made payable to a clerk of court/bail commissioner in Massachusetts. A summary of the cash deposits into PERLMUTTER's account

---

[6] Note that this figure does not include the February 3, 2010 transaction described below.

follows:

## Table 1.4

| Date | | Cash | Deposit Location |
|------|---|------|------------------|
| 2/21/2006 | $ | 25.000 | Dudley Street |
| 5/22/2006 | $ | 150 | Center Plaza |
| 8/9/2006 | $ | 300 | Waban |
| 8/24/2006 | $ | 400 | Center Plaza |
| 9/22/2006 | $ | 500 | Burlington Center |
| 11/1/2006 | $ | 500 | Burlington Center |
| | | | |
| **2006** | **$** | **26,850** | |
| | | | |
| 2/1/2007 | $ | 1.500 | West Newton |
| 2/9/2007 | $ | 100 | Malden - Centre St |
| 2/16/2007 | $ | 25.000 | Dudley Street |
| 3/26/2007 | $ | 20,000 | Chestnut Hill Mall |
| 4/16/2007 | $ | 50,000 | Dudley Street |
| 5/9/2007 | $ | 75,000 | Dudley Street |
| 5/14/2007 | $ | 20.000 | Dudley Street |
| 5/16/2007 | $ | 50.000 | Dudley Street |
| 5/16/2007 | $ | 120 | Dudley Street |
| 6/25/2007 | $ | 60.000 | Chestnut Hill Mall |
| 7/31/2007 | $ | 100,000 | Dudley Street |
| 8/20/2007 | $ | 30.000 | Chestnut Hill Mall |
| 8/20/2007 | $ | 30.000 | Dudley Street |
| 10/10/2007 | $ | 150 | Tremont Street |
| 10/22/2007 | $ | 25.000 | Dudley Street |
| 12/6/2007 | $ | 25.000 | Dudley Street |
| 12/13/2007 | $ | 10.000 | Dudley Street |
| 12/13/2007 | $ | 10,000 | Dudley Street |
| | | | |
| **2007** | **$** | **531,870** | |
| | | | |
| 1/8/2008 | $ | 250. | Dudley Street |
| 2/15/2008 | $ | 60,000 | Dudley Street |
| 2/15/2008 | $ | 45 | Mystic Ave |
| 3/25/2008 | $ | 25,000 | Dudley Street |
| 4/2/2008 | $ | 25,000 | Dudley Street |
| 4/22/2008 | $ | 20,000 | Dudley Street |
| 5/13/2008 | $ | 40,000 | Dudley Street |
| 6/30/2008 | $ | 35,000 | Chestnut Hill Mall |
| 7/14/2008 | $ | 50,000 | Dudley Street |
| 9/29/2008 | $ | 75,000 | Dudley Street |
| 10/14/2008 | $ | 25,000 | Chestnut Hill Mall |
| 11/10/2008 | $ | 20,000 | Chestnut Hill Mall |
| 11/21/2008 | $ | 35,000 | Dudley Street |

| 12/8/2008 | $ | 25,000 | Dudley Street |
| 12/18/2008 | $ | 25,000 | Dudley Street |
| **2008** | **$** | **460,295** | |
| 2/5/2009 | $ | 35,000 | Dudley Street |
| 2/19/2009 | $ | 80,000 | Dudley Street |
| 3/17/2009 | $ | 5,000 | Dudley Street |
| 4/13/2009 | $ | 30,000 | Dudley Street |
| 4/13/2009 | $ | 25,000 | Exeter Plaza |
| 5/27/2009 | $ | 250,000 | Dudley Street |
| 6/19/2009 | $ | 25,000 | Dudley Street |
| 6/23/2009 | $ | 35,000 | Dudley Street |
| 7/10/2009 | $ | 80,000 | Dudley Street |
| 7/28/2009 | $ | 5,000 | |
| 8/4/2009 | $ | 20,000 | |
| 8/13/2009 | $ | 50,000 | Dudley Street |
| 10/6/2009 | $ | 50,000 | |
| 12/8/2009 | $ | 50,000 | Dudley Street |
| **2009** | **$** | **740,000** | |
| **Total:** | | **$1,759,015** | |

46.    According to CBRS records, PERLMUTTER did not file a Form 8300 for any of the above-cited transactions in Table 1.4. In fact, according to CBRS records, PERLMUTTER has never filed a Form 8300.

Additional Information from IRS

47.    Pursuant to an I-Order signed by the Honorable George A. O'Toole, U.S. District Judge, District of Massachusetts, on October 22, 2009, I received information from the IRS related to PERLMUTTER's Form 1040 federal tax return filing history. According to those records, PERLMUTTER did not file a Form 1040 federal income tax return with the IRS for any of the years 2002 through 2007, inclusive. In 2008, PERLMUTTER filed a joint return with his wife Neusa Piske. On the 2008 return, Piske and PERLMUTTER reported an adjusted gross income of $24,442. The adjusted gross income consisted primarily of PERLMUTTER's legal business, for which he

19

reported gross receipts of $94,796 and net receipts (less expenses) of $67,281 on the attached

Schedule C (Profit and Loss From Business). Piske and PERLMUTTER also reported a $30,895

loss from an S-Corporation in the name of Carolle Chic, Inc. which appears to have been owned by

Piske. PERLMUTTER listed 19 Johnson Place, Newton, Massachusetts as the address on his 2008

tax return.

### February 3, 2010 $100,000 Transaction

48.     On February 3, 2010, PERLMUTTER agreed to do a $100,000 bail transaction with

Benzan. In recorded calls leading up to the transaction between approximately 10:30 a.m. and 2:00

p.m., PERLMUTTER agreed to meet Benzan at his storefront office in Roxbury, where Benzan was

waiting with $100,000 in official advance funds from DEA. Agents conducting surveillance

observed PERLMUTTER arrive at Benzan's office at approximately 2:00 p.m., at which time

Benzan came outside and placed a bag in PERLMUTTER's vehicle. Surveillance agents then

observed PERLMUTTER travel to the Bank of America branch at 112 Dudley Street.

PERLMUTTER remained inside the bank for approximately twenty minutes, at which time he was

observed by agents converting the $100,000 in cash into a cashier's check. PERLMUTTER then

exited the bank. Shortly after exiting the bank, PERLMUTTER was arrested by agents. Upon arrest,

agents recovered $500 in cash from PERLMUTTER, as well as a $100,000 cashier's check made

payable to Charlestown District Court.

49.   Based on the foregoing I believe there is probable cause to issue the requested

Criminal Complaint.

Ryan J. Talbot
Special Agent
Internal Revenue Service

Subscribed and sworn to before me, this __3__ day
of February 2010

HONORABLE MARIANNE B. BOWLER
United States Magistrate Judge